RTC COMMERCIAL ASSETS TRUST 1995–NP3–1, a Delaware business trust, Plaintiff,

v.

PHOENIX BOND & INDEMNITY COMPANY, COOK COUNTY ex rel. Thomas C. HYNES in his capacity as the County Assessor, Edward J. Rosewell in his capacity as the County Treasurer and the County Collector, and David Orr in his capacity as the County Clerk, Defendants.

No. 96 C 2382.

United States District Court, N.D. Illinois, Eastern Division.

May 6, 1997.

Edward Sidney Weil, Gary P. Segal, Schwartz, Cooper, Greenberg & Krauss, Chicago, IL, Jill Anne Glickstein, Rudnick & Wolfe, Chicago, IL, Rodney C. Slutzky, Chicago, IL, for RTC Commercial Assets Trust 1995–NP3–1.

Stanford D. Marks, Chicago, IL, Andrew William Marks, Chicago, IL, for Phoenix Bond & Indem. Co.

David Adam Victor, Donna M. Lach, State's Attorney of Cook County, Chicago, IL, David Mark Lavin, Cook County State's Attorney's Office, Chicago, IL, for Thomas C. Hynes, Edward J. Rosewell and David Orr.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff RTC Commercial Assets Trust has filed a four count amended complaint seeking declaratory relief against defendant Phoenix Bond & Indemnity Company ("Phoenix"), Thomas C. Hynes in his capacity as Cook County Assessor, Edward J. Rosewell in his capacity as County Treasurer and County Collector, and David Orr in his capacity as County Clerk (jointly the "County Defendants"). Specifically, plaintiff seeks an order from this court declaring invalid certain tax liens, originally held by the County and later sold to Phoenix, on real estate property in which plaintiff owns a mortgage lien interest. Plaintiff also seeks a declaration that it has a right to a reassessment of the value of the real property for the tax years in question. Defendants have moved to dismiss all counts, arguing that the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341,

divests this court of subject matter jurisdiction, and that even if the court has jurisdiction, the complaint fails to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff has moved for summary judgment on all counts. For the reasons set forth below, the court grants defendants' motion to dismiss as to Counts I, II, IV and portions of III. Plaintiff's motion for summary judgment is granted as to portions of Count III and denied as to all other counts.

## FACTS

Plaintiff is a Delaware business trust qualified to do business in Illinois, which holds a collateral assignment of 100% of the beneficial interest ("CABI") in a land trust as security for repayment of a loan to 185 North Wabash Partnership of approximately $904,000.00. The land trust holds an undivided one-half leasehold interest in two of six adjacent parcels of land, and an undivided one-half fee simple interest in four parcels which together have the common address of 185 North Wabash Avenue, Chicago, Illinois (the "Property"). Plaintiff also holds a leasehold mortgage encumbering all six parcels as security for repayment of a loan of $15,000,000. The CABI and mortgage were originally held by Trans Ohio Federal Savings Bank. On July 20, 1992, Trans Ohio was seized by the Resolution Trust Company ("RTC"), which was appointed receiver. As receiver, RTC succeeded to all of Trans Ohio's rights in and to the Property and loans. On October 24, 1995, the CABI and mortgage were assigned to plaintiff by the RTC as receiver.

Phoenix is alleged to be "an entity qualified to do business in Illinois which maintains offices and/or conducts business in Cook County, Illinois." On or about March 1, 1995, Phoenix purchased a tax certificate at a Cook County tax sale representing the 1993 real estate taxes on a portion, of the Property. Phoenix subsequently purchased certificates representing the second installment of the 1991 real estate taxes, all of the 1992 real estate taxes, and the first installment of the 1994 real estate taxes.

On November 18, 1996, Phoenix filed a notice and petition in the Circuit Court of Cook County ("the Take Notice") to obtain by foreclosure a deed to a portion of the property represented by the tax certificates. The Take Notice provides that a petition for tax deed has been filed which would transfer title and right of possession of the property if redemption is not made on or before April 18, 1997.[1]

Under Illinois law, "the taxes upon the property, together with all penalties, interest and costs that may accrue thereon, shall be a prior and first lien on the property, superior to all other liens and encumbrances, from and including the first day of January in the year in which the taxes are levied, until the taxes are paid or until the property is sold under this code." 35 ILCS 200/21–75. Thus, two of the liens in question, for the years 1991 and 1992, attached prior to RTC acquiring any interest in the property, while the liens for 1993, 1994, 1995, if they exist, attached after RTC acquired its interest, but prior to its assignment of that interest to plaintiff.

On March 14, 1997, plaintiff filed its second amended complaint. In Counts I and II, plaintiff seeks a declaration that pursuant to 12 U.S.C. § 1825(b)(2), the liens imposed by Cook County for the years 1993, 1994 and 1995, are void and that as a result, any attempt by Phoenix to attach liens or to foreclose on the real estate is void. In Count III, plaintiff seeks a declaration that pursuant to 12 U.S.C. § 1825(b)(3) neither Phoenix nor the County has a lien or a claim against plaintiff for any interest, penalties or other charges. Finally, in Count IV plaintiff seeks a declaration that pursuant to 1825(b)(1) it, as assignee of the RTC, is entitled to challenge the County Assessor's assessment of the real estate for the years 1991 through 1995.

## DISCUSSION

Defendants first assert that the court does not have subject matter jurisdiction over any

---

1. Phoenix holds the ad valorem real estate tax liens for the years 1991, 1992, 1993 and part of 1994.

of plaintiff's claims. The court's subject matter jurisdiction is predicated on diversity of citizenship, 28 U.S.C. § 1331. That complete diversity exists is not contested. The TIA provides, however, that district courts,

> shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under state law where a plain, speedy and efficient remedy may be had in the courts of such state.

██ The limitation imposed by the TIA is jurisdictional. *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1242 (11th Cir.1991). Thus the issue before the court is whether in any or all of its claims, plaintiff seeks to enjoin, suspend or restrain the assessment, levy or collection of any state tax.

While there have been a number of federal cases dealing with the Federal Deposit Insurance Corporation's ("FDIC") (or RTC's) rights to avoid real estate tax liens pursuant to Section 1825(b), few have addressed whether the TIA divested the court of subject matter jurisdiction. In *Irving Independent School District v. Packard Properties, Limited*, 741 F.Supp. 120 (N.D.Tx.1990), a local school district brought suit seeking recovery of unpaid ad valorem real estate taxes. The County intervened as a plaintiff, and then the Federal Savings and Loan Insurance Corporation ("FSLIC") was added as receiver for the savings and loan that held a mortgage on the property. The FDIC, which had substituted for FSLIC, moved for summary judgment contending that under 12 U.S.C. § 1825(b)(3) it could not be held liable for certain penalties and interest authorized by the Texas Tax Code when those taxes were not paid. In response, the County argued that the TIA prohibited the court from interfering with the County's collection of taxes, thereby divesting the court of jurisdiction.

The court held that the TIA does not preclude federal court jurisdiction over a suit brought to collect a state tax, but rather only divested the court of jurisdiction over suits brought to enjoin, suspend or restrain collection of taxes. Because the lawsuit was brought by the taxing authority to collect the tax, it was not precluded by the TIA. The court further held that the case was properly removed notwithstanding the TIA, relying on *Carrollton–Farmers Branch Independent School District v. Johnson and Cravens*, 858 F.2d 1010 (5th Cir.1988), vacated on other grounds 889 F.2d 571 (5th Cir.1989), which rejected the argument that the TIA precluded the FSLIC from removing to federal court a state action seeking recovery of delinquent taxes, holding that the FSLIC's special removal provision operated as an exception to the TIA.

The instant case, however, is not a suit brought by a taxing authority seeking recovery of unpaid taxes, but rather is a suit seeking to void certain tax liens. Additionally, this court has already held that plaintiff may not take advantage of the RTC's statutory jurisdictional grant. *RTC Commercial Assets Trust v. Phoenix Bond*, 943 F.Supp. 962 (N.D.Ill.1996). Thus, *Irving* is factually distinguishable and lends little guidance to the issue before this court.

In *Bank of New England Old Colony, N.A. v. Clark*, 986 F.2d 600 (1st Cir.1993), the FDIC removed a tax dispute to the district court pursuant to its removal statute, 12 U.S.C. § 1819(b)(2)(B). The State moved to remand, arguing that the TIA divested the court of jurisdiction. The FDIC argued that it was exempt from the TIA under the judicially created "federal instrumentalities" exception (*see Dept. of Employment v. United States*, 385 U.S. 355, 357–58, 87 S.Ct. 464, 466–67, 17 L.Ed.2d 414 (1966)), which establishes that the TIA does not bar access to federal courts by the United States or its instrumentalities. A magistrate judge held that the FDIC was a federal instrumentality exempt from the TIA. The district court then reversed, holding that: (1) the FDIC was not entitled to the federal instrumentality exemption; (2) Section 1819 vested the court with jurisdiction; and (3) the TIA required the court to abstain from deciding the case.

On appeal, the First Circuit, after analyzing several cases addressing the issue of whether FDIC is a federal instrumentality qualifying for the exemption from the TIA, held that the FDIC did not qualify. It found that the relevant legislation, § 1819(b), granted the FDIC agency status for limited purposes only, unlike its predecessor statute

for the FSLIC which was granted agency status for all purposes. See 12 U.S.C. § 1730(k)(1)(A) (repealed 1989). Having determined that the FDIC was not exempt, the court next analyzed whether Congress clearly and manifestly intended its jurisdictional grant under Section 1819(b)(2) to be an exception to the TIA. Turning to the language of the removal statute, the court held that it did not manifest an intent to override the TIA. Once again, the court compared the FDIC removal statute to its predecessor for the FSLIC, which began by stating "notwithstanding any other provision of law...." Because the FDIC jurisdictional statute contained no such provision, the court held that Congress did not intend to override the TIA. *Id.* at 600 through 604.

Finally, in *Simon v. Cebrick*, 53 F.3d 17 (3rd Cir.1995), a case factually similar to the instant case, a private purchaser of real estate tax certificates brought a foreclosure action and the FDIC, as holder of inferior liens, removed to federal court. The plaintiff argued that by invoking the protection of Section 1825(b)(2), as plaintiff does in the instant case, the FDIC was seeking to restrain the collection of taxes, thus implicating the TIA. The Third Circuit first stated, without holding, that it did not agree with plaintiff's position that the TIA was implicated because all the FDIC sought to do was to withhold its consent to foreclosure by a private citizen, which did not implicate the assessment, levy or collection of any tax. According to the court, the TIA was intended to prevent interference with taxation by governmental entities; but that upon the sale of the tax certificate, the tax obligation had been satisfied. Therefore, the holder's inability to foreclose did not affect the governmental entity's ability to assess, levy or collect any tax. *Id.* at 21.

Next, the court rejected that the removal section was intended to override the TIA. Finally, the court held that the FDIC is a federal instrumentality entitled to the exception to the TIA, because it was acting in a governmental capacity when it wound up the affairs of the failed banking institution. The court distinguished *Old Colony*, because in that case only state tax issues were involved

and the FDIC was only asserting state law grounds for relief. In *Simon*, the FDIC sought relief under a federal statute. Therefore, the court held that the FDIC was entitled to invoke the federal instrumentality exception to the TIA.

■ As noted, however, this court has already held that because RTC is not a party to the case plaintiff cannot, through its assignment from RTC, assert the statutory grant of federal jurisdiction. *RTC Commercial Assets Trust v. Phoenix Bond*, 943 F.Supp. 962. The court now holds that for the same reasons, plaintiff cannot assert the federal instrumentality exemption to the TIA. Therefore, the TIA is applicable to any count in which plaintiff seeks to enjoin, restrain or suspend the assessment, levy or collection of any tax.

■ In Count I, plaintiff seeks to declare void Phoenix's tax liens. Under the *Simon* court's rationale, the TIA would not be implicated because Phoenix has already paid for the tax certificates, thus satisfying the tax obligation. Under Illinois law, however, if Phoenix's lien is declared void, it has a right to rescind its purchase based on the existence of "an interest held by the United States in property sold which can not be extinguished by tax deed." 35 ILCS 200/21–310(b)(3). Thus, if this court were to grant the relief plaintiff seeks, the indirect result would require the County to take back the tax certificates leaving it with an uncollected tax. That the requested relief would restrain or suspend the collection of tax indirectly does not make the TIA any less applicable. *See Blangeres v. Burlington Northern, Inc.*, 872 F.2d 327 (9th Cir.1989) (TIA applies to indirect, as well as direct restraints on the assessment of taxes).

■ Plaintiff argues that because it only challenges the tax lien, not the levy or assessment of the tax, it does not implicate the Act. In Illinois, however, property taxes do not create any personal liability; they are liens that run with the land. *Chodl v. Chodl*, 37 Ill.App.3d 52, 344 N.E.2d 711 (2nd Dist. 1976). Thus, by asking the court to void the liens, plaintiff is in effect asking the court to void the tax. Moreover, in Count II, plaintiff

seeks to declare invalid any lien the County may have had prior to any sale to Phoenix. This clearly implicates the levy and collection of the tax, thereby implicating the TIA and divesting this court of jurisdiction. Therefore, the court concludes that the TIA is applicable because there is no question that plaintiff has a fast, efficient remedy in state court. As this court has already noted, the state courts are perfectly capable of and do decide the issues raised by plaintiff's complaint. Indeed, plaintiff has already appeared in the state court action and can raise these issues as a defense to any effort by Phoenix to foreclose on the property or otherwise collect the taxes from plaintiff.

■ In Count IV, plaintiff seeks a declaration that it is entitled to a reassessment of the taxes for the years in question. This obviously implicates the assessment of taxes, and this court is divested of jurisdiction over this count by the TIA. *See Fox River Valley R.R. v. Dept. of Rev. of Wisconsin,* 863 F.Supp. 893 (E.D.Wis.1994). Accordingly, the court dismisses Counts I, II, and IV for lack of subject matter jurisdiction.

Count III is somewhat more difficult. In this count, plaintiff argues that as RTC's assignee, under Section 1825(b) it cannot be liable for any charges levied that are in the nature of penalties for failure to pay taxes. As noted above, n. 1, under Illinois law, taxes, together with any penalties, interest and costs that may accrue thereon, shall be a prior and first lien on the property. 35 ILCS 200/21–75. Thus the question is whether such interest and penalties that accrue for the failure to timely pay taxes are compensatory in nature (thus considered taxes implicating the TIA), or are actual penalties. *See Irving,* 741 F.Supp. 120. In *Irving,* the court faced the identical question. It held that whether the funds in question constituted penalties or interest within the meaning of Section 1825(b)(3) is a federal question, the resolution of which is guided by reference to state law. Reviewing the relevant portions of the Texas Tax Code, the court found that they were on their face penalty provisions, and that the FDIC was not liable for their payment.

■ Illinois courts have consistently characterized the impositions charged on delinquent real estate taxes as an interest penalty or simply a penalty. *See Kousins v. Anderson,* 229 Ill.App.3d 486, 171 Ill.Dec. 275, 593 N.E.2d 1095 (2nd Dist.1992). Indeed, they have been characterized as penalties to aid in the administration and collection of taxes, not fees for the purpose of generating additional tax revenues. *Village of Oak Lawn v. Rosewell,* 128 Ill.App.3d 639, 83 Ill.Dec. 904, 471 N.E.2d 203 (1st Dist. 1984). Because Illinois considers the charges resulting from delinquent payment of taxes as penalties, they are not taxes and do not implicate the TIA. Therefore, the court has jurisdiction over Count III.

In addition to their TIA defense, defendants have also moved to dismiss for failure to state a claim, arguing first that § 1825 defenses are personal to the RTC and cannot be assigned to plaintiff, and second that even if assignable § 1825(b)(3) does not afford plaintiff the relief it seeks.

■ In its previous opinion in this case the court examined the *D'Oench Duhme* doctrine (*see D'Oench Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942)), its codification and supplementation in 12 U.S.C. § 1823, and subsequent cases that have extended the protections of the doctrine and statute to assignees of the FDIC and RTC. In that opinion this court determined that it would not further the policy behind the statute to extend the FDIC's federal jurisdictional grant to private assignees. *RTC Commercial Assets Trust,* 943 F. Supp. at 965–66. That policy is to encourage purchasers to acquire assets from the RTC and thus ease the RTC's ability to protect the assets of failed institutions. Requiring assignees to litigate in state court would do nothing to further that goal. Failure to extend the § 1825(b) defenses to assignees of the RTC, however, would emasculate that policy and serve to weaken RTC's ability to dispose of failed bank assets. *See F.D.I.C. v. Bledsoe,* 989 F.2d 805, 811 (5th Cir.1993). Accordingly, the court concludes that plaintiff, as assignee of RTC, can assert the rights set forth in § 1825(b)(3).

■ That section provides that the RTC when acting as receiver shall not be liable for any amounts in the nature of penalties and fines, including those arising from the failure of any person to pay any real property tax when due. Phoenix admits that the RTC would not be liable for any penalties or fines that accrued while it was acting as receiver (July 1992 through October 24, 1995). It correctly asserts, however, that RTC (and therefore plaintiff) are responsible for any taxes, fines and penalties and are subject to any liens that accrued or attached prior to the receivership. *See Irving*, 741 F.Supp. 120; *Carrollton–Farmers*, 858 F.2d 1010 (pre-receivership liens and penalties survive receivership). Thus, to the extent that Count III seeks a declaration that plaintiff is not responsible for pre-receivership penalties and fines, the count fails to state a claim under Fed.R.Civ.P. 12(b)(6) and is dismissed.

■ Plaintiff also seeks a declaration that pursuant to § 1825(b)(3) no lien may attach to the Property for any penalty, interest or fine that accrued during the receivership. That section, however, contains no provisions preventing attachment of any liens, or the accrual of such penalties or fines. It simply provides that the RTC will not be liable for any amounts that may accrue. Accordingly, to the extent that the count seeks a declaration that defendants hold no liens for penalties, the count fails to state a claim and is dismissed.[2]

Finally, because there are no material facts in dispute, the court holds that plaintiff is entitled to summary judgment on its claim that it is not liable for any interest, fines or penalties resulting from delinquent payment of taxes during the period of receivership.

### CONCLUSION

For the reasons set forth above, Counts I, II, and IV are dismissed for lack of subject matter jurisdiction pursuant to the Tax Injunction Act. Those portions of Count III that seek a declaration that plaintiff is not liable for any penalties, fines or interest that accrued prior to the period of receivership, or to void any liens, are dismissed for failure to state a claim. Plaintiff is granted summary judgment on the portion of Count III that seeks a declaration that it is not liable for penalties, interest and fines that accrued during the receivership. Plaintiff's motion for summary judgment is denied as to all other counts.

---

2. Nor can plaintiff rely on § 1825(b)(2) to attack the penalty liens. That section prevents the involuntary attachment of liens to property of the RTC. In Illinois, real estate taxes (and the penalties) attach as liens to real property, not to mortgage liens. In fact, they take priority over mortgage liens. *See* p. 3 *supra*. Because RTC never owned the real property, the liens have not attached to property of the RTC. Thus, § 1825(b)(2) is inapplicable. *See Simon*, 53 F.3d at 21.