

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-10-2001

# Old Bridge Owners Assn. v. Old Bridge Twp.

Precedential or Non-Precedential:

Docket 99-5602 & 99-5603

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Old Bridge Owners Assn. v. Old Bridge Twp." (2001). *2001 Decisions.* Paper 72.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/72

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 10, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos.: 99-5602, 99-5603

OLD BRIDGE OWNERS COOPERATIVE CORP;
NORTH COUNTY CONSERVANCY OF UNION CITY, L.L.C.;
GRANDVIEW ESTATES OF NEW JERSEY, LP ,
a New Jersey Limited Partnership; OLD BRIDGE
PARTNERS I, L.L.C., a New Jersey Limited
Liability Company

FEDERAL DEPOSIT INSURANCE CORPORATION, as
Receiver for Metro North State Bank and The Mer chants
Bank ("FDIC") Intervenor-Plaintif f in D.C.

v.

TWP OF OLD BRIDGE;
OLD BRIDGE MUNICIPAL UTILITIES AUTHORITY

        Twp of Old Bridge,
        Appellant in 99-5602

        Federal Deposit Insurance
        Corporation, as Receiver for
        Metro North State Bank and
        The Merchants Bank ("FDIC"),
        Appellant in 99-5603

Appeal from the United States District Court
for the District of New Jersey
D.C. No.: 95-CV-02539
District Judge: Honorable John W. Bissell

Submitted Under Third Circuit LAR 34.1(a)
February 6, 2001

Before: BECKER, Chief Judge, AMBRO and
STAPLETON, Circuit Judges

(Opinion Filed: April 10, 2001)

        Timothy J. O'Neill
        Jamieson, Moore, Peskin & Spicer
        300 Alexander Park
        Princeton, NJ 08543-5276

        Counsel for North County Conservacy
        of Union City, L.L.C. and Old Bridge
        Partners I, L.L.C.

        Lawrence H. Richmond
        Federal Deposit Insurance
         Corporation
        801 17th Street N.W.
        Washington, DC 20434

        Counsel for Federal Deposit
        Insurance Corporation

        William S. Ruggierio
        Township of Old Bridge
        One Old Bridge Plaza
        Old Bridge, NJ 08857

        Counsel for Township of Old Bridge

        Louis E. Granata
        Granata, Wernik & Zaccardi
        210 Main Street
        P.O. Box 389
        Matawan, NJ 07747

        Counsel for Old Bridge Municipal
        Utilities Authority

Keith A. Bonchi
Goldenberg, Mackler, Sayegh, Mintz,
 Pfeffer, Bonchi & Gill
660 New Road
Suite 1A
Northfield, NJ 08225

Counsel for New Jersey State League
of Municipalities and Tax Collectors
and Treasurers Association of New
Jersey

OPINION OF THE COURT

AMBRO, Circuit Judge:

Federal Deposit Insurance Corporation ("FDIC") appeals from the final judgment of the United States District Court for the District of New Jersey holding the FDIC personally liable for delinquent property taxes, and water and sewer charges, accrued with respect to an apartment complex during the years that the FDIC held a mortgage inter est in the property.

In 1988 Old Bridge Owners Cooperative Corp. ("Owners") and Grandview Estates, L.P. ("Grandview") purchased an apartment complex named Sterling Estates. The pur chase was financed with a $12 million loan. After defaulting on loan payments, Owners and Grandview refinanced the loan (presumably including accrued but unpaid inter est) into two separate debts, with each debt secured by a separate mortgage. The first mortgage (the "Metr o mortgage"), securing the amount of approximately $9 million, was held by Metro North State Bank ("Metro"). The second mortgage (the "Coreast mortgage"), securing the amount of approximately $4 million, was held by Cor east Savings Bank ("Coreast"). Owners and Grandview later defaulted on repayment of the debts secured by the mortgages, and both Metro and Coreast became insolvent.

In 1991, Resolution Trust Company ("R TC")1 was

_____

1. The RTC was created by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub. L. No. 101-73, 103 Stat.

3

appointed receiver for Coreast. RTC transferred the Coreast mortgage to North County Conservancy, Inc. ("North County") in 1994. In 1992, the FDIC was appointed receiver for Metro. In March 1994, the FDIC instituted an action to foreclose on the Metro mortgage that r esulted in a foreclosure judgment in the amount of $17.5 million. In 1995, the FDIC obtained the title to Sterling Estates through a sheriff 's sale and sold the apartment complex to North County. When North County acquired Sterling Estates, property taxes and water and sewer charges had not been paid for the years 1990 through 1995.

North County brought this action against the T ownship of Old Bridge ("Township") and the Old Bridge Municipal Utilities Authority ("MUA") to have the 1990–1995 liens for the unpaid property taxes and other char ges declared void pursuant to 12 U.S.C. S 1825(b), which pr ovides a detailed tax exemption framework applicable to property of the FDIC. The FDIC intervened as a plaintiff.

On January 11, 1996, the District Court held that S 1825(b) precluded any liens securing pr operty taxes and water and sewer charges from attaching to Sterling Estates from 1991 to 1995, the years during which the FDIC held the Metro mortgage in receivership. See Old Bridge Owners Coop. Corp. v. Township of Old Bridge, 914 F. Supp. 1059, 1064–66 (D.N.J. 1996). But the Court also held that the FDIC would remain personally liable for the delinquent property taxes and other charges accumulated during those years. See id.

The District Court reached this conclusion based on its interpretation of three sub-sections ofS 1825(b). The Court reasoned that, under a broad exemption contained within S 1825(b)(1),2 the FDIC was liable for the delinquent

_____

183 (1989) (codified at 12 U.S.C. 1441a(b)(1),(3)), to mirror the FDIC's resolution responsibilities with r espect to insolvent savings and loan institutions. The RTC existed until 1995, at which time the FDIC became the RTC's successor by operation of law. Pub. L. No. 101–73, 103 Stat. 183 (1989) (codified as amended at 12 U.S.C. 1441a(m)(1)).

2. Section 1825(b)(1) provides that the FDIC as receiver "shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except that any real pr operty of the [FDIC] shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other r eal property is taxed."

4

property taxes and other charges accrued against the Sterling Estates for the period of time during which the FDIC held a mortgage interest in the pr operty. See id. at 1064. However, the Court further observed that, under S 1825(b)(2),3 these pr operty taxes and other charges could not be secured through a lien attaching to Sterling Estates. See id. at 1065. Finally, the Court noted that S 1825(b)(3)4-- which exempts the FDIC from penalties or fines arising from a failure to pay property taxes owed-- would be unnecessary if S 1825(b)(2) entirely exempted the FDIC from tax liability. See id. at 1065-66. The Court therefore concluded that the FDIC must remain personally liable under S 1825(b)(1) for the delinquent taxes and charges that could not be secured through a lien attaching to Sterling Estates because of S 1825(b)(2). 5

The FDIC filed a motion for reconsideration arguing that the District Court had misinterpreted the subsections of S 1825(b). Under S 1825(b)(1), the FDIC contended that it was liable for ad valorem property taxes and other charges on any real property it owns, but not on real property in which it only has a mortgage interest.6 It further alleged that S 1825(b)(2) does not preclude the attachment of a lien to Sterling Estates because the apartment complex was not owned by, and therefore not the "pr operty of," the FDIC.7 In

_____

3. Section 1825(b)(2) provides that "no property of the [FDIC] shall be subject to levy, attachment, garnishment, for eclosure, or sale without the consent of the [FDIC], nor shall any involuntary lien attach to the property of the [FDIC]."

4. Section 1825(b)(3) provides that the FDIC"shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any r ecording or filing fees when due."

5. The District Court also held that any pr operty taxes and other charges arising prior to the federal receivership would be secured by a lien attaching to the apartment complex, but S 1825(b)(2) protects the FDIC's interest by requiring its consent befor e foreclosure of the property to satisfy the lien. See id. at 1065.
6. The FDIC's Tax Policy Statement on Section 1825(b)(1) provides that it is liable for any ad valorem pr operty taxes on real property it owns. See Statement of Policy Regarding the Payment of State and Local Property Taxes, 61 Fed. Reg. 65,053, 65,057 (Dec. 10, 1996).
7. The FDIC's Tax Policy Statement on Section 1825(b)(2) provides that tax liens are permitted to attach to r eal property in which the FDIC only

5

short, the FDIC claimed that a lien should have attached to Sterling Estates to secure the delinquent pr operty taxes and other charges. Moreover, that lien should have run with the land when it was sold to North County, and the FDIC, as a mere mortgage holder, should not have been held personally liable for the delinquent amounts. However, on March 7, 1996, the District Court denied the FDIC's motion for reconsideration. After further pr oceedings, final judgment was entered on July 9, 1999, and North County and the FDIC appealed.

The overwhelming weight of authority is that Section 1825(b)(1) does not give rise to the FDIC's liability for taxes and charges accrued on real property in which the FDIC has a mere mortgage interest, and thatS 1825(b)(2) does not prevent liens from attaching to such property. See S/N– 1 REO Ltd. Liability Co. v. City of Fall River, 81 F. Supp. 2d 142, 150–51 (D. Mass. 1999); RTC Commer cial Assets Trust 1995–NP3–1 v. Phoenix Bond & Indem. Co., 963 F . Supp. 706, 712 n.2 (N.D. Ill. 1997); In re Staf ford Pool & Fitness Ctr., 252 B.R. 627, 630 (Bankr. D. N.J. 2000); PNL Asset Mgmt Co. v. Kerrville Ind. Sch. Dist., 37 S.W .3d 80, 84 (Tex. App. 2000); Town of East Lyme v. New England National, LLC, No. 547594, 2000 WL 1784127, at *4 (Conn. Super . Nov. 9, 2000); 37 Huntington St. v. City of Hartford, No. CV 99059067, 2000 WL 226372, at *4 (Conn. Super . Feb. 10, 2000); Casino Reinvestment Dev. Auth. v. Cohen , 728 A.2d 868, 870–72 (N.J. Super. Ct. Law Div. 1998); see also Atlantic National Trust, L.L.C., No. CV 00–1087, slip op. at 14–15 (D.N.J. Jan. 10, 2001) (unpublished).

However, subsequent to the filing of this appeal North County surrendered the unpaid property tax under protest and paid the water and sewer charges pursuant to a settlement agreement. Moreover, North County voluntarily withdrew its appeal because it no longer had any stake in the case after paying the Township and MUA. The FDIC urges us to review the District Court's decision nevertheless

_____

holds a mortgage interest. See Statement of Policy Regarding the Payment of State and Local Property Taxes, 61 Fed. Reg. 65,053, 65,058 (Dec. 10, 1996).

6

because it has collateral legal consequences for the FDIC in other proceedings that can be effectively addressed by a decision of this Court. See National Iranian Oil Co. v. Mapco Int'l, Inc., 983 F.2d 485, 490 (3d Cir. 1992) ("If a trial court's order will have possible collateral legal consequences, a case is not moot."); accor d Int'l Bhd. of Boilermakers v. Kelly, 815 F.2d 912, 916 n.5 (3d Cir. 1987).

We empathize with the FDIC's position, butfind that we are unable to reach the merits because its appeal is moot. Mootness occurs when there is no live contr oversy left to be resolved. Int'l Bhd. of Boilermakers , 815 F.2d at 915. Article III, section 2, clause 1 of the United States Constitution dictates that a cause of action must present a case or controversy. "To establish the existence of such a `live' issue, there must be `a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " Int'l Bhd. of Boilermakers, 815 F.2d at 915 (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 241 (1937)). A central question in determining mootness is whether a change in circumstances since the beginning of the litigation precludes any occasion for meaningful r elief. Jersey Cent. Power & Light Co. v. New Jersey, 772 F.2d 35, 39 (3d Cir. 1985). Since the filing of this appeal, North County paid the property taxes and the water and sewer char ges. No case and controversy remains. Moreover , we do not believe that the collateral consequences the FDIC complains of ar e sufficient to save this appeal from being r endered moot.

However, we note that "[g]enerally, when a case becomes moot pending disposition of an appeal, the judgment below will be vacated and the case will be remanded with instructions to dismiss." Humphreys v. Drug Enforcement Admin., 105 F.3d 112, 113 (3d Cir . 1996) (citing United States v. Munsingwear, Inc., 340 U.S. 36, 39-40 (1950)). Whether to vacate a decision because of mootness is within the Court's discretion based on equity. Id. at 114. A major equitable consideration is whether the parties,"through no fault of their own, [have] been deprived of a review on the merits of the district court's adverse rulings and ought not to be forced to acquiesce in them." In r e Orthopedic Bone

7

Screw Prods. Liab. Litig., 94 F .3d 110, 111 (3d Cir. 1996).
In U.S. Bancorp Mortgage Co. v. Bonner Mall P'Ship, 513
U.S. 18, 25 (1994), the Supreme Court advised that "[a]
party who seeks review of the merits of an adverse ruling,
but is frustrated by the vagaries of circumstance, ought not
in fairness be forced to acquiesce in the judgment." We
conclude that the FDIC should not be penalized by allowing
the District Court's ruling to stand when it is pr ecluded,
through no fault of its own, from having that decision
reviewed on the merits. We will ther efore grant the
equitable relief of vacatur.

*   *   *

For the foregoing reasons, we dismiss this appeal as moot
but vacate the judgment of the District Court.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

8