[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action to foreclose tax liens on the property of the defendant, New England National, LLC. The facts are not in dispute. On July 25, 1989, CCNE Group Limited Partnership purchased the subject property, located at 16 Mostowy Road in East Lyme. On September 20, 1989, CCNE mortgaged the property to Suffield Bank, with guarantees by Kenneth Schwartz and Leonard Ginsberg. On May 22, 1991, Suffield Bank commenced a mortgage foreclosure action against CCNE and the guarantors. While the mortgage foreclosure action was pending, the FDIC, in its capacity as receiver for Suffield Bank, was substituted as the plaintiff. One of the guarantors, Kenneth Schwartz, filed for chapter 7 bankruptcy on May 10, 1993. On January 28, 1994, the other guarantor, Leonard Ginsberg, became CT Page 13735 the subject of an involuntary chapter 7 bankruptcy action. On August 8, 1995, the FDIC assigned the note and mortgage to Drum Rock, Inc., which in turn assigned the note and mortgage to Robert Blatt, Trustee, by deed dated August 16, 1995. Blatt, Trustee, was thereafter substituted as plaintiff in the mortgage foreclosure action. Title to the property vested in Blatt, Trustee, by virtue of a certificate of foreclosure dated November 27, 1995 and recorded November 28, 1995. On April 1, 1998, Blatt, Trustee, conveyed the property by quitclaim deed to New England National, LLC, the defendant in the present case.
The present action was filed on August 18, 1998. The plaintiff seeks to foreclose two tax liens on the property. The two liens arose from the tax lists of October 1, 1993 and October 1, 1994, respectively. Certificates continuing the two tax liens were filed on May 10, 1995 and May 21, 1996, respectively. The defendant or its predecessors in interest made various payments on the outstanding taxes on the property. A March 7, 1996 payment in the amount of $45,558.78 was applied to the outstanding taxes, interest and charges from the 1989 and 1990 lists. A September 16, 1997 payment in the amount of $37,500 was applied to the outstanding taxes, interest and charges from the 1990 and 1991 lists. A February 27, 1998 payment in the amount of $50,000 was applied to the outstanding taxes, interest and charges from the 1991 and 1992 lists. Finally, a May 1, 1998 payment in the amount of $20,000 was applied to the outstanding taxes, interest and charges from the 1992 list and to a portion of the interest arising from the 1993 list. According to the plaintiff's affidavit of debt, there is still a total of $92,611.16 owing on the taxes, interest and fees arising from the 1993 and 1994 lists.
 I SPECIAL DEFENSES
The defendant filed six special defenses on October 1, 1998. In its post-trial brief, the defendant argues that five of these six special defenses should each prevent a judgment of foreclosure. First, the defendant claims that the court should not enter a judgment of foreclosure because the validity and amount of the underlying tax assessments are the subject of a prior tax appeal now pending before the Appellate Court. Second, the defendant argues that the payments made by itself or its predecessors in interest should have been applied to the taxes assessed in 1993 and 1994, rather than those assessed in earlier years, and that the amounts claimed by the plaintiff have therefore been paid. Third, the defendant argues that the tax liens are invalid because they attached to property in which the FDIC had a mortgage interest, in violation of 12 U.S.C. § 1825 (b)(2). Fourth, the defendant argues that the 18% interest charged on the taxes owing between 1991 and 1995 CT Page 13736 amounted to a penalty or fine against the FDIC in violation of12 U.S.C. § 1825 (b)(3), and that the amounts applied to paying off that interest should have been applied instead to the 1993 and 1994 taxes. Fifth, the defendant argues that the liens in the present case were filed in violation of the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362 (a). The court will address each of these defenses in turn.
 A PRIOR PENDING ACTION
The defendant first argues that a judgment of foreclosure is inappropriate because there is a prior action pending before the Appellate Court in which one of the issues is the validity of the same tax assessments that form the basis of the present case. "The prior pending action doctrine permits the court to dismiss a second case that raises issues currently pending before the court. The pendency of a prior suit of the same character, between the same parties, brought to obtain the same end or object, is, at common law, good cause for abatement." (Internal quotation marks omitted.) Cumberland Farms, Inc. v. Groton,247 Conn. 196, 216 (1998).
It is well-established that a motion to dismiss is the proper vehicle to raise the issue of a prior pending action. Halpern v. Board ofEducation, 196 Conn. 647, 652 n. 4 (1985). By filing an answer and special defenses, the defendant waived the right to invoke the prior pending action doctrine. See Practice Book §§ 10-6 and 10-7. Furthermore, the prior pending action doctrine "does not truly implicate subject matter jurisdiction. . . . It may not, therefore, as is true in the case of classic subject matter jurisdiction, always be raised at any time."Gaudio v. Gaudio, 23 Conn. App. 287, 294-95, cert. denied, 217 Conn. 803
(1990). Because the defendant did not raise the prior pending action doctrine by way of a timely motion to dismiss, the court will not now consider this argument.
 B PAYMENT
The defendant next argues that, as a result of payments made between March 7, 1996 and May 1, 1998, there are no longer any amounts owing for the 1993 and 1994 assessments. The plaintiff, on the other hand, argues that the payments were properly applied to earlier outstanding taxes as required by General Statutes § 12-144b, which provides:
CT Page 13737 "Each tax payment made to a municipality for taxes due on any specific property shall be applied by the municipality toward payment of the oldest outstanding tax levied on such property with the interest thereon; provided, if there is litigation pending between the municipality and the party liable for the oldest outstanding tax on such property concerning such oldest outstanding tax, such tax payment shall only be applied to the oldest outstanding tax on such property which is not involved in such litigation, provided this section shall not apply to tax payments tendered by third parties pursuant to contract or by operation of law."
As a preliminary matter, the defendant argues that the plaintiff should not be permitted to argue that the payments were properly applied to earlier taxes. According to the defendant, the plaintiff's application of the payments to the delinquent taxes from years prior to 1993 should have been placed in issue as a matter in avoidance of the defendant's special defense pursuant to Practice Book § 10-57.[1] The following additional facts are pertinent to the defendant's argument. In the complaint, filed August 18, 1998, the plaintiff alleged, in paragraph five of both the first and second counts, that "[n]o part of this tax has been paid." In its answer, filed on October 1, 1998, the defendant denied paragraph five of each count. At the same time, the defendant filed its sixth special defense, which provided, in its entirety, "Defendant made payments of taxes which when properly applied discharge any tax obligation plead by Plaintiffs." The plaintiff's reply to the sixth special defense stated, "The Plaintiff has insufficient knowledge and leaves the Defendant to its proof." The defendant claims that the plaintiff's reply was inadequate and that the plaintiff should have affirmatively pleaded the correct application of the defendant's payments as a matter in avoidance.
Because of the vagueness of the sixth special defense, however, the plaintiff could not be expected to plead additional facts relating to the correct application of the payments. The defendant did not plead any specific facts as to the amount or date of the payments, and the defense was therefore insufficient to fairly apprise the plaintiff of the exact nature of the defendant's claim. See Practice Book §§ 10-1 and 10-2. The defendant may not exploit the failure of the plaintiff to plead in response to a special defense when that failure was caused by the defendant's own inadequate pleading. Furthermore, the sixth special defense alleged "payments of taxes which when proper! y applied discharge any tax obligation plead by Plaintiffs." (Emphasis added.) The issue of the proper application of payments was therefore specifically raised by CT Page 13738 the defendant. The court will consider the parties' arguments on the matter.
The defendant argues that the payments made between March 7, 1996 and May 1, 1998 were not properly applied to the taxes, interest and fees arising from the 1989 to 1992 assessments, because the defendant is not personally liable for any taxes assessed before it owned the property. According to the defendant, the plaintiff's failure to provide evidence of valid tax liens for the years between 1989 and 1992 precludes a conclusion that the payments were properly applied to those years. General Statutes § 12-144b provides that taxes are to be applied "toward payment of the oldest outstanding tax levied on such property with the interest thereon. . . ." The defendant does not dispute that, at the time of the payments, the 1989 to 1992 taxes were the oldest outstanding taxes levied on the property. Therefore, under the plain language of the statute, the payments were correctly applied.
The defendant also cites to the exception in § 12-144b for situations where "there is litigation pending between the municipality and the party liable for the oldest outstanding tax on such property concerning such oldest outstanding tax." As the defendant itself has pointed out, "[t]he party against whom a tax is assessed is directly liable for the tax and his duty [to pay it] is clear." (Internal quotation marks omitted.) Schnier v. Commissioner of Transportation,172 Conn. 427, 430 (1977). The owner of the property between 1989 and 1992 was CCNE. The defendant has not offered evidence of any litigation between CCNE and the municipality regarding the taxes in question. The plaintiff in the separate tax appeal related to this property was Robert Blatt, the defendant's predecessor in interest. While that case was pending, the present defendant was added as an additional plaintiff. The defendant has offered no evidence, and has not argued, that either the defendant or Blatt was "the party liable for the oldest outstanding tax" when the payments were made. The court therefore finds that the payments were correctly applied to the oldest outstanding taxes on the property.
 C 12 U.S.C. § 1825 (b)(2)
The defendant next argues that the plaintiff violated12 U.S.C. § 1825 (b)(2) by filing the certificate continuing the tax lien for the 1993 taxes on May 10, 1995. 12 U.S.C. § 1825 (b) provides, in part:
 "When acting as a receiver, the following provisions shall apply with respect to the [FDIC]: CT Page 13739
 "(1) The [FDIC] . . . shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except that any real property of the [FDIC] shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed, except that, notwithstanding the failure of any person to challenge an assessment under State law of such property's value, such value, and the tax thereon, shall be determined as of the period for which such tax is imposed.
 "(2) No property of the [FDIC] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the [FDIC], nor shall any involuntary lien attach to the property of the [FDIC]."
The defendant argues that because the FDIC held a mortgage interest in the property on May 10, 1995, the filing of the certificate continuing the tax lien was invalid. It is not clear from the language of the statute whether the phrase "property of the [FDIC]" includes property in which the FDIC holds a mortgage lien. In Old Bridge Owners CooperativeCorp. v. Township of Old Bridge, 914 F. Sup. 1059 (D.N.J. 1996), tax liens that attached to property subject to a mortgage lien of the FDIC as receiver were held to be invalid.
The Old Bridge decision, however, is contrary to the policy of the FDIC itself. The official policy of the FDIC is that "a lien for taxes and interest may attach to property in which the Corporation has a lien or security interest, but the Corporation will not permit a lien or security interest held by it to be eliminated by foreclosure without the Corporation's consent." FDIC Statement of Policy Regarding the Payment of State and Local Property Taxes, 61 Fed. Reg. 65, 058 (1996).
Our Supreme Court recently elaborated at length on the deference to be given to federal agencies' interpretations of federal statutes:
 "Although it is not controlling, the interpretation of a federal agency is entitled to substantial deference. Chevron U.S.A., inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844-45, 104 S.Ct. 2778, 81 L.Ed.2d 694, reh. denied, 468 U.S. 1227, 105 S.Ct. 28, 82 L.Ed.2d 921 (1984) (Chevron). The Chevron analysis requires us first to determine CT Page 13740 "whether the intent of Congress is clear as to the precise question at issue. . . . If, by employing traditional tools of statutory construction . . . we determine that Congress' intent is clear, that is the end of the matter. . . ." (Citations omitted; internal quotation marks omitted.) Regions Hospital v. Shalala, 522 U.S. 448, 457, 118 S.Ct. 909, 139 L.Ed.2d 895 (1998); Chevron, supra, 842-43. "If a statute's meaning is plain, the [agency that administers the program] and reviewing courts must give effect to the unambiguously expressed intent of Congress.' (Internal quotation marks omitted.) Holly Farms Corp. v. National Labor Relations Board, 517 U.S. 392, 398, 116 S.Ct. 1396, 134 L.Ed.2d 593
(1996); Chevron, supra, 842-43. This is step one review under Chevron.
 "Step two review under Chevron informs us that: "[i]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. . . . If the agency's reading fills a gap or defines a term in a reasonable way in light of [Congressional] design, we give that reading controlling weight, even if it is not the answer the court would have reached if the question initially had arisen in a judicial proceeding.' (Citation omitted; internal quotation marks omitted.) Regions Hospital v. Shalala, supra, 522 U.S. 457; Chevron, supra, 467 U.S. 843. "[W]e must sustain the [agency's] approach so long as it is based on a permissible construction of the statute.' (Internal quotation marks omitted.) Auer v. Robbins, 519 U.S. 452, 457, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997); Chevron, supra, 843. "When the legislative prescription is not free from ambiguity . . . [c]ourts . . . must respect the judgment of the agency empowered to apply the law to varying fact patterns . . . even if the issue with nearly equal reason [might] be resolved one way rather than another. . . .' (Citations omitted; internal quotation marks omitted.) Holly Farms Corp. v. National Labor Relations Board, supra, 517 U.S. 398-99."
Bell Atlantic Mobile, Inc. v. Dept. of Public Utility Control,253 Conn. 453, 470-71 (2000). CT Page 13741
Because 12 U.S.C. § 1825 (b) is ambiguous regarding the attachment of tax liens to property in which the FDIC has a security interest, this court will defer to the interpretation of the FDIC that such attachment is permitted. This conclusion is further supported by several recent cases that have criticized the holding of the Old Bridge court. See In reStafford Pool Fitness Center, 252 B.R. 627 (Bankr.D.N.J. 2000); CasinoReinvestment Development Authority v. Cohen, 728 A.2d 868
(N.J.Super.Ct. Law Div. 1998). The court in each of those cases ruled that a tax lien may attach to property on which the FDIC 1C holds a mortgage lien.
Furthermore, a recent opinion of this court likewise concluded that a tax lien may attach to real property despite a mortgage lien held by the FDIC as receiver. In 37 Huntington Street v. Hartford, Superior Court, judicial district of Hartford, Docket No. 590607 (February 10, 2000,Wagner, J.T.R.) (26 Conn.L.Rptr. 525-27), the court noted the Supreme Court's statement in Red Rooster Construction Co. v. River Associates,Inc., 224 Conn. 563, 569 (1993), that "[d]espite our title theory of mortgages, [i]n substance and effect . . . and except for a very limited purpose, the mortgage is regarded as mere security . . . and the mortgagor is for most purposes regarded as the sole owner of the land. . . . The mortgagee has title and ownership enough to make his security available, but for substantially all other purposes he is not regarded as owner, but the mortgagor is so regarded, always subject of course to the mortgage." (Internal quotation marks omitted.) The Huntington Street court also observed that "under Connecticut law, liens for delinquent real estate taxes attach to the real property." 37 Huntington Street v. Hartford, supra, 26 Conn.L.Rptr. 527, citing General Statutes § 12-172.
Because a tax lien attaches not to a mortgage interest but to the real property itself and because of the official policy of the FDIC, the court agrees with the plaintiff that 12 U.S.C. § 1825 (b)(2) does not prevent the attachment of tax liens to property in which the FDIC holds a mortgage interest.
 D 12 U.S.C. § 1825 (b)(3)
Next, the defendant argues that the 18% interest charged on the delinquent taxes pursuant to General Statutes § 12-146 was invalid to the extent that it accrued while the FDIC had an interest in the property. In support of its position, the defendant cites to12 U.S.C. § 1825 (b)(3), which provides that, when acting as receiver, the FDIC "shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person CT Page 13742 to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due." The defendant maintains that the 80% interest constitutes a prohibited penalty or fine, and that any payment amounts that were applied to paying off the interest should have been applied instead to paying off the 1993 and 1994 taxes at issue in the present case.
The issue of whether 18% percent interest under General Statutes §12-146 constitutes a penalty within the meaning of 12 U.S.C. § 1825
(b)(3) was recently addressed by the Second Circuit Court of Appeals. InNational Loan Inventors L.P. v. Orange, 204 F.3d 407, 412 (2nd Cir. 2000), the court stated:
 "Whether a charge constitutes a penalty for purposes of § 1825(b)(3) is a federal question informed by state law. . . . The Superior Court of Connecticut has construed § 12-146 and held that assessments of the kind at issue in this case are not in the nature of penalties because, among other reasons, the 80% rate `was imposed primarily to ensure that municipalities receive fair compensation for delayed payment of taxes in light of fluctuating market rates, inflation, and collection costs.' [Monroe v. 837 Main Street Corp., 45 Conn. Sup. 283, 292
(1997)].
 "Informed by state law, we are inclined to agree with the [Monroe] court's conclusion.
 "The purpose of a penalty (in the present context) is to serve as an incentive to prompt payment. . . . Obviously, a percentage surcharge in any amount on an unpaid obligation can be characterized as an inducement to payment, and the higher the surcharge, the greater the inducement. In this case, it is safe to say that the assessment is not a penalty to the extent, if any, that it compensates the [municipality] for the loss of use of money caused by nonpayment."
The court went on to conclude that the burden was on the landowner to prove that the 18% interest operated, at least in part, as a penalty. Because the landowner failed to offer evidence to that effect, the court held that it was liable to pay the charge in full. Id. Similarly, the burden in the present case is on the defendant to prove its special defense. The defendant, however, has offered no evidence showing to what extent the 18% interest operates to induce payment, rather than to CT Page 13743 compensate the plaintiff. Consequently, 12 U.S.C. § 1825 (b)(3) will not operate as an obstacle to foreclosure of the tax liens.
 E EFFECT OF THE MORTGAGE GUARANTORS' BANKRUPTCY
The defendant's final argument is that the liens that the plaintiff seeks to foreclose were filed in violation of 11 U.S.C. § 362 (a).[2]
That section sets forth eight specific types of actions that are automatically stayed by the filing of a petition of bankruptcy. According to the defendant, the filing of the tax liens in the present case violated the automatic stay provisions, because the two guarantors of the then-existing mortgage had filed for bankruptcy.
Although the defendant has not specified which of the eight provisions of 11 U.S.C. § 362 (a) is applicable, it is clear that only subsections (4) and (5) relate to the creation, perfection, or enforcement of liens. The former applies to liens "against the property of the [bankruptcy] estate" and the latter applies to liens "against the property of the debtor." The defendant has offered no evidence showing that any property of the guarantors was subject to the tax liens in issue in this case.
Furthermore, the defendant has cited to no case authority for the proposition that a tax lien may not be filed against property subject to a mortgage when the mortgage guarantor has filed for bankruptcy. None of the cases upon which the defendant relies is on point. The defendant cites In re St. Amamt, 41 B.R. 1 56 (Bankr.D.Conn. 1984), for the proposition that a right of redemption is a property right subject to the automatic stay provisions. In that case, the court held that pursuant to subsections (1), (2), (3), (4), and (6) of 11 U.S.C. § 362 (a), a property owner's bankruptcy filing, following a judgment of strict foreclosure, stayed the running of the law day. Id., 163. Because the debtor was the owner of the property and because there was a foreclosure action pending against the debtor, the facts of that case brought it within the clear language of 11 U.S.C. § 362 (a).
The defendant also relies on a Connecticut case, First ConstitutionBank v. Flanders, Superior Court, judicial district of New Haven, Docket No. 3101 64 (March 22, 1995, Celotto, S.T.R.) (14 Conn.L.Rptr. 218). In the Flanders case, as in St. Amant, the issue was whether the filing of a bankruptcy petition would stay the passing of the law day. As in the present case, however, the bankruptcy debtor in the Flanders case was a mortgage guarantor, rather than the owner of the property. The court distinguished the St. Amant decision at page 220 as follows: CT Page 13744
 "[T]he St. Amant court determined that the passing of a judgment lienor's law day constituted a violation of the stay imposed pursuant to §§ 362(a)(2), (3) and (4). In the present case, although §§ 362(a) (3) and (4) do not stay the passing of Flanders' law day, the passing of Flanders' law day is "the enforcement against the debtor . . . of a judgment obtained before the commencement' of Flanders' bankruptcy case pursuant to § 362(a)(2). Hence the passing of Flanders' law day was stayed by his chapter 13 bankruptcy petition."
Similarly, in the present case § 362(a)(3) and (4) are inapplicable because the bankruptcy debtors did not have an ownership interest in the property. Furthermore, the defendant in the present case is challenging the creation and filing of tax liens rather than a mortgage foreclosure action. Unlike the Flanders case, therefore,11 U.S.C. § 362 (a)(2), which requires a stay of "the enforcement . . . of a judgment," is entirely inapplicable. Contrary to the defendant's argument, therefore, the holding of the Flanders court actually supports the conclusion that the guarantors' bankruptcy filings did not stay the filing of the liens in the present case. The defendant has failed to show that the tax liens are invalid.
 II CONCLUSION
The defendant has failed to carry its burden of proving one or more of its special defenses. The court finds that the tax liens arising from the 1993 and 1994 assessments are valid and a judgment of foreclosure is hereby entered for the plaintiff.
Hendel, J.